**Dick PLACE and Angie Place, Appellants–Plaintiffs,**

v.

**SAGAMORE CENTER, INC., Appellee–Defendant.**

**No. 54A01–9208–CV–280.**

Court of Appeals of Indiana, First District.

Dec. 17, 1992.

Transfer Denied March 5, 1993.

C. Warren Holland, Michael W. Holland, Holland & Holland, Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, for appellants-plaintiffs.

Michael V. Gooch, Edward R. Hannon, Donald L. Centers, Harrison & Moberly, Indianapolis, for appellee-defendant.

ROBERTSON, Judge.

Dick and Angie Place [Place] appeal the adverse summary judgment entered against them in their premises liability suit against the Sagamore Center, Inc. Place raises two (2) issues, neither of which constitutes reversible error.

## FACTS

The facts in the light most favorable to nonmovant Place indicate that the Metzger Lumber Company sold the building which is the subject of this suit to the Sagamore Center, Inc. on August 8, 1988. However, Metzger retained possession of the building after the sale under a month to month lease arrangement in order to store its possessions until they could be moved to Metzger's new headquarters and warehouse. No inspection of the building for the purpose of determining soundness, structural integrity, or safety was conducted before the sale. The Purchase Agreement and Counter Offers for the sale of the building contained the terms under which Metzger leased back the building from Sagamore.

Under the terms of the rental agreement, Sagamore did not have free access to the interior of the building. Sagamore did not have a key to the building. However, Sagamore could have accessed the building by obtaining a key from Metzger. The Purchase Agreement provided:

MAINTENANCE OF PROPERTY: [Metzger] agrees that maintaining the condition of the Property and related equipment is his responsibility during the period of this Contract and/or until time of possession, whichever is later.

Metzger occupied the building and paid rent to Sagamore until March of 1989 when it gave possession to Sagamore.

On January 27, 1989, Appellant Place, a Metzger employee, was injured while work-

ing in the building. At that time, Metzger was still in possession of the building under the rental arrangement. However, Sagamore had obtained liability insurance on the building.

At the time of the accident, Place and two other Metzger employees were removing materials from the building in order that these materials could be taken to Metzger's new headquarters and warehouse. When Place piled lumber on the freight elevator, a rotted wood member supporting the elevator's pulley gave way causing the elevator to tilt and fall to the floor below. Place fell and suffered serious and permanent personal injuries.

On January 30, 1989, an inspection was conducted on behalf of the Division of Elevator Safety of the Office of the Building Commissioner for the State of Indiana. The inspection report indicated that the elevator was illegal and ordered that it be completely removed under 675 IAC 21–1–1. The elevator was sealed out of service for the following reasons: "(1) This is an illegal elevator, (2) No operating permit, (3) elevator has rotten support wood beams." The Elevator inspector determined that Place's accident was caused by the deteriorated beams that supported the illegal elevator.

An inspection by a structural engineer revealed that the wood member supporting the elevator pulley system had become rotten as the result of repeated exposure to moisture and water over an extended period of time. The engineer's inspection found that the ceiling and the roof wood decking were stained and discolored from water that had penetrated the building. Water had come through the roof and had run down columns onto the beam that held the elevator cable. The area of the beam where the failure had occurred had noticeable water stains which were readily observable.

## DECISION

■ Initially, we must set out the well-settled standard for summary judgment. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all the material designated by the parties including pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 411 N.E.2d 614. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448, *trans. denied.* Furthermore, T.R. 56(H) provides that:

> [n]o judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence

relevant thereto shall have been specifically designated to the trial court.

The parties are in agreement that generally, a landlord who gives his tenant full control and possession of leased property will not be liable for the personal injury sustained by the tenant or other persons lawfully upon the leased property. *Flott v. Cates* (1988), Ind.App., 528 N.E.2d 847. However, Indiana has recognized several exceptions to the doctrine of caveat leasee. *Id.* Place argues that his action can be sustained under one or more of these exceptions.

### I.

Whether Sagamore's duty to Place can be predicated upon an elevator safety statute?

■ Place asserts that Sagamore, as the owner of the premises, is liable per se for the violation of the following statute governing elevator safety:

(a) This section does not apply to a person who uses a regulated lifting device unless the person also has authority to:

(1) construct, repair, or maintain the regulated lifting device; or

(2) place the regulated lifting device out of service.

(b) This section applies to the following:

(1) Each person who operates a regulated lifting device.

(2) Each person who has control over the operation of a regulated lifting device.

(3) Each person who has control over the place where a regulated lifting device is operated.

(c) A person described in subsection (b) commits a Class C infraction if:

(1) a regulated lifting device is operated; and

(2) no regulated lifting device operating permit covers the operation.

Ind.Code 22–15–5–5. "Control" as used in the statute is defined by I.C. 22–12–1–8 as follows:

"Control" means authority to create, change, or eliminate a condition or to initiate, regulate, or terminate conduct that is based on any of the following:

(1) An agency, employment, or contractual relationship.

(2) A possessory or nonpossessory ownership or leasehold interest in property.

(3) A contractual right to possess or use property.

Under the facts most favorable to Place, we conclude, as a matter of law, that Sagamore did not have control over the premises in question at the time of the accident sufficient to invoke liability under the statute. At the time of the accident, Sagamore had never been in possession of or had free access to the building but could only have entered the building after obtaining a key from Metzger. Moreover, under the purchase/lease arrangement, Metzger remained responsible for building maintenance until possession was surrendered to Sagamore. Therefore, Place's premises liability suit against Sagamore cannot be predicated upon I.C. 22–15–5–5.

### II.

Whether Place's suit can be sustained under either the "public use" or "nuisance" exceptions to the doctrine of caveat leasee?

■ Place argues that the "public use" exception applies. This exception has been stated as follows:

Where premises are leased for public or semi-public purposes, and at time of lease conditions exist which render premises unsafe for purposes intended, or constitute a nuisance, and landlord knows or by exercise of reasonable care ought to know of conditions, and a third person suffers injury on account thereof, landlord is liable, because third person is there at invitation of landlord, as well as of tenant. (Citation omitted.)

*Walker v. Ellis* (1955), 126 Ind.App. 353, 371, 129 N.E.2d 65, 73, *trans. denied; Pitcock v. Worldwide Recycling, Inc.* (1991), Ind.App., 582 N.E.2d 412, 415.

In the present case, Place has failed to allege any facts indicating that Sagamore

leased the premises to Metzger for a public purpose. Moreover, we are not convinced that Place, as the employee of the tenant, Metzger, qualifies as a "third person" under the "public purposes" exception. Therefore, Place's suit cannot be sustained under the "public purpose" exception. *See, Pitcock, id.*

 Place next argues that the "nuisance" exception applies. In *Walker*, 129 N.E.2d 65, we noted that a landlord who created a dangerous condition on his property which caused an injury could be held liable under a nuisance theory.

In *Stover v. Fechtman* (1966), 140 Ind. App. 62, 222 N.E.2d 281, we examined the so-called "nuisance" exception to the doctrine of caveat leasee. We noted:

> [t]he exact nature of this exception is difficult to discern. However, it can be no broader than the principles within nuisance concepts *per se.*

140 Ind.App. at 67, 222 N.E.2d at 284. We noted further that the essence of a private nuisance is that one party is using his property to the detriment of the use and enjoyment of the property of another and held that a dangerous condition on a premises that caused a slip and fall could not constitute a private nuisance because it could not fairly be considered an interference with another person's property. *Id.* Moreover, we held that the dangerous condition on the premises that caused the accident could not constitute a public nuisance because the property was not open to the public at large. *Id.* at 68, 222 N.E.2d at 284.

In the present case, Sagamore did not create the dangerous condition that caused Place's accident. Sagamore had never had possession of or free access to the premises at the time of the accident. Moreover, the dangerous condition that caused Place's injuries could not have constituted a private or public nuisance. The defective elevator could not be considered an interference with the property of Place. Nor was the premises held open to the public at large. Therefore, Place's suit cannot be sustained under the "nuisance" exception.

Judgment affirmed.

BAKER and CHEZEM, JJ., concur.